Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000096
22-MAY-2019
08:58 AM

NO. CAAP-17-0000096

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KAYCEE A. HIGA, Petitioner-Appellee, v.
GABBY ORDONEZ-SNOW, Respondent-Appellant

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-DA NO. 17-1-0028)


SUMMARY DISPOSITION ORDER
(By:  Fujise and Reifurth, JJ., with
Ginoza, Chief Judge, dissenting)

Respondent-Appellant Gabby L. Ordonez-Snow appeals from the February 1, 2017 Order for Protection entered after a hearing in the Family Court of the Second Circuit ("Family Court").[1] Ordonez-Snow contends that the Family Court (1) denied him due process of law under the Fifth and Fourteenth Amendments of the United States Constitution; and (2) abused its discretion by "providing testimony" on behalf of Petitioner-Appellee Kaycee A. Higa by synopsizing her position for her without allowing Ordonez-Snow's counsel "to elicit direct or cross examination."

Upon careful review of the record and briefs submitted by the parties and having given due consideration to the arguments advanced and the issues they raise, as well as the relevant statutory and case law, we resolve Ordonez-Snow's points of error as follows, and affirm the Order for Protection.

---

[1]    The Honorable Keith E. Tanaka presided.

Higa filed an Ex Parte Petition for an HRS 586 Temporary Restraining Order on January 20, 2017 ("Petition"). In the Petition, Higa contended that she and Ordonez-Snow were in a romantic dating relationship for three years; that on January 19, 2017, she was at Sansei's with a few friends; that Ordonez-Snow was also there and asked to speak to her outside; and that he was "in my face saying that I was lying to him, and he was yelling and in my face angry." Higa added that when she and her friends left Sansei's, Ordonez-Snow "refused to let me and my friends leave until he could beat up a guy that I was with." Higa added that Ordonez-Snow had, in the past, "threatened to kill [her] on numerous occasions[,] about five or six times[,]" that he had choked and slapped her because he was angry, and that "the verbal abuse was constant when we were together." Higa described how, after she got in her car and left the parking lot of, Ordonez-Snow got into his truck and began following her. She explained that "[h]e began tailing the back of my car very close and yelling out of his window at me and my car, and I was really scared at that point." Higa called the police, drove to the police station, and filed a report. Higa also claims that in December, 2016, Ordonez-Snow "tried to commit suicide, texting me that he had taken all of his anti-depressant pills, and that if I cared I would call the police." Since then, Higa has told him to leave her alone, but "he has been texting and calling me non-stop and I haven't responded."

Based on the allegations in the Petition, the Family Court issued a Temporary Restraining Order ("TRO") against Ordonez-Snow on January 20, 2017, to expire on July 19, 2017, and with a hearing scheduled on February 1, 2017, for Ordonez-Snow to show cause why the TRO should not continue.[2]

---

[2] An order to show cause hearing is required after issuance of an ex parte TRO:

> §586-5 **Period of order; hearing.** (a) A temporary restraining order granted pursuant to this chapter shall remain in effect at the discretion of the court for a period not to exceed one hundred eighty days from the date the order is granted or until the effective date, as defined in section 586-5.6, of a protective order issued by the court, whichever
>
> (continued...)

2

At the show cause hearing, the Family Court confirmed with Higa that she wanted to proceed and that everything in the Petition was true and correct. The Family Court, with Higa's assistance, summed up the allegations, and asked Ordonez-Snow if he wished to reply to the allegations.

> THE COURT: Okay. So, essentially, if I could just sum it up, you know, the last incident happened at Sansei Restaurant on January 19th and he was there kind of making -- yelling and refusing to let you leave until he beat up you -- what I guess you consider your boyfriend which he's not your boyfriend.
>
> MS. HIGA: He did, but he's not.
>
> THE COURT: You were just there with some friend?
>
> MS. HIGA: Yeah.
>
> THE COURT: And then he started to follow you in his car until you went to the Kihei police station. And, essentially, you just want him to leave you alone. He's kind of like obsessed and stalking and won't leave you alone.
>
> MS. HIGA: Yes. After he says he will, he doesn't.
>
> THE COURT: Okay. And he continuously texts and calls you also. Okay.
>
> Mr Ordonez-Snow, do you want to reply to those allegations?

Ordonez-Snow said that "[s]ome of the allegations are not true[,]" and the court asked him to describe what happened at the Sansei Restaurant on January 19th. Ordonez-Snow explained his version of events, highlighting that he "didn't do anything in the restaurant" and "did not go to their table at all." Ordonez-Snow said that he was in front of the restaurant because he was smoking, that Higa exited the restaurant, and that she and her friends started yelling at him. At that point, he says, he walked away. Although he admitted that someone had to hold him back, Ordonez-Snow emphasized that "[n]ot once did I refuse to let them leave" and that "I didn't threaten to beat [Higa's companion]. I didn't touch him at all." Furthermore, Ordonez-Snow said that he did not follow Higa in his truck, that he went

---

2/ (...continued)
       occurs first.

Haw. Rev. Stat. § 586-5.4 (2016).

to another bar and met up with his friends over there.

In response to the allegation that he called and texted Higa obsessively, Ordonez-Snow testified:

> Honestly, I wasn't obsessive with her at all. I came back. We hung out a few times. She stayed at my house. We went to get lunch, dinner, whatever the case was. I wouldn't say that was obsessive because if that was obsessive, then she wouldn't be willing to meet me.

Furthermore, although he admitted to having sent a text to Higa saying "I'll see you on the other side," he did not say that he was going to kill himself or that he had taken all of his anti-depressant pills.

The court asked Higa whether she wanted to respond to Ordonez-Snow's testimony and if she was sticking to her story. Higa replied affirmatively and clarified her version of the events that took place on January 19, 2017. The court then asked Ordonez-Snow's counsel if he had any witnesses to call:

> THE COURT: Mr. Ragan, do you have any witnesses you want to call?
>
> MR. RAGAN: Just the respondent, your Honor.
>
> THE COURT: Well, he's already testified.
>
> MR. RAGAN: And just maybe a few -- to clean up things, you know. That might help the Court.
>
> THE COURT: Well, I think I've heard enough. As far as the court's concerned based upon the testimony and evidence presented, I'm going to grant the restraining order. I'm going to -- I find that there is domestic abuse involved here. I'm going to -- I also find that the protective order is necessary.

The Family Court granted the Order for Protection for three years.

I. Due process

Ordonez-Snow contends that the Family Court violated the Fifth Amendment of the United States Constitution by not allowing his counsel to (i) cross-examine Higa, or (ii) elicit direct testimony from Ordonez-Snow directly.

From our review of the transcript, the only thing that prevented Ordonez-Snow's counsel from cross-examining Higa was counsel's failure to request that he be allowed to do so.

Ordonez-Snow points to nothing in the record on appeal establishing that his counsel made such a request and we observe none. Because we cannot conclude that the Family Court prevented Ordonez-Snow's counsel from cross-examining Higa, we observe no due process violation on that basis.

Counsel did indicate, however, that he wished to call his client as a witness after the court had completed its initial examination of the parties. When the court responded by noting that Ordonez-Snow had already testified, counsel explained: "And just maybe a few -- to clean up things, you know. That might help the Court." While counsel understandably treads a fine line—suggesting that he might be in a better position to elicit pertinent information from or to pursue other lines of inquiry with his client than the judge—it remains counsel's obligation to justify his request before we can conclude on appeal that his client, who had just been provided an open-ended invitation to testify and address the allegations, was denied due process.

We have previously relied on the legislative history of HRS chapter 586 in determining that the legislature's decision to require only a preponderance of the evidence when issuing restraining orders in domestic abuse cases was not unconstitutional:

> HRS § 586-5 addresses the problem of domestic abuse by providing protection for an abused family or household member through the issuance of a restraining order. The legislature enacted HRS Chapter 586 in 1982 "to streamline the procedures for obtaining and issuing ex parte temporary restraining orders to prevent acts of or the recurrence of domestic abuse." Hse. Conf. Comm. Rep. No. 1, in 1982 House Journal, at 815; *see also* Hse. Stand. Comm. Rep. No. 592, in 1982 House Journal, at 1165; Sen. Conf. Comm. Rep. No. 4, in 1982 Senate Journal, at 873. The Senate Standing Committee Report found that a restraining order serves "to cool violent relationships that have been developing for a number of years" and that giving the court "the discretion to extend protective orders" provides "greater flexibility in trying to calm the emotionally charged nature of such situations." Sen. Stand. Comm. Rep. No. 643, in 1982 Senate Journal, at 1222. Thus, the purpose of the restraining order is to "prevent acts of abuse, or a recurrence of actual domestic abuse, and assure a period of separation of the parties involved." HRS § 586-4.

*Coyle v. Compton*, 85 Hawai'i 197, 204-05, 940 P.2d 404, 411-12 (App. 1997) (brackets omitted). The same purpose, here,

militates against our determining a heretofore-unrecognized due process right to direct examination by one's own counsel at a show cause civil proceeding where the respondent has already been provided an open-ended opportunity to address the petitioner's allegations, and where counsel's explanation for the need for such testimony is limited to "just maybe a few [questions] -- to clean up things, you know. That might help the Court."

We have also previously considered the case of a family court judge conducting the examination of the petitioner in a show cause hearing despite the fact that the petitioner was represented by counsel:

> THE COURT: Okay. We'll proceed to trial.
>
> You received the documents where the [c]ourt has indicated how long you had to do your trial? You're aware of how we do trials?
>
> [DEFENDANT]: Yes.
>
> THE COURT: All right. Very well. We'll start at this time then.
>
> [Plaintiff], I show you a document entitled Ex Parte Petition of Temporary (unintelligible). Have you ever seen this paper before?
>
> [PLAINTIFF]: Yes.
>
> THE COURT: Do you recognize it?
>
> [PLAINTIFF] Yes.
>
> THE COURT: And why do you recognize it?
>
> [PLAINTIFF]: It's — I filled it out.
>
> THE COURT: Your handwriting?
>
> [PLAINTIFF]: My handwriting.
>
> THE COURT: Oh, okay. Thank you.
>
> . . . .
>
> THE COURT: On the second page you made some allegations regarding alleged physical harm. In item seven, you put an X mark and you were physically blocked pathway to prevent you from entering house. You put 6/25/98. Did you write those words and put those [sic] date?
>
> [PLAINTIFF]: Yes, I did.
>
> THE COURT: Did this happen?
>
> [PLAINTIFF]: Yes.

> THE COURT: Down below in item D you allege
> extreme psychological abuse.  Could you read the
> words to me, please?
>
> . . . .
>
> THE COURT: And what's the date these events took
> place?
>
> [PLAINTIFF]: April '98 through July '98.
>
> THE COURT: Okay.  You believe you're in imminent
> danger from [Defendant]?
>
> [PLAINTIFF]: Yes.
>
> THE COURT: Thank you.

*Kie v. McMahel*, 91 Hawai'i 438 442 n.11, 984 P.2d 1264, 1268 n.11 (App. 1999).  Although we noted that "there are limits to the extent to which a trial court may insert itself into the proceedings[,]" *id.* at 443, 984 P.2d at 1269 (quoting *State v. Silva*, 78 Hawai'i 115, 118, 890 P.2d 702, 705 (App. 1995)), we recognized that a judge is entitled to question witnesses and did not declare intervention of this sort to be impermissible.[3]

"[T]he requirements of due process frequently vary with the type of proceeding involved." *Calasa v. Greenwell*, 2 Haw. App. 395, 399, 633 P.2d 553, 556 (1981) (citing 16A Am. Jur. 2d, *Constitutional Law* § 815 (1979)).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *State v. Guidry*, 105 Hawai'i 222, 234, 96 P.3d 242, 254 (2004) (quoting *State v. Bani*, 97 Hawai'i 285, 296, 36 P.3d 1255, 1266 (2001)) (internal quotation marks omitted).  A due process challenge will fail where the following standard is met:

> An elementary and fundamental requirement of due
> process in any proceeding which is to be accorded finality
> is notice reasonably calculated, under all circumstances, to

---

[3]      *Kie* also involved the unchallenged admission of testimony by means of an offer of proof by plaintiff's counsel, which remained unchallenged on appeal.  We noted there that "[s]ince the court did not refuse evidence in support of Plaintiff's allegations, the offer of proof here was a misuse of that evidentiary device." *Kie*, 91 Hawai'i at 443, 984 P.2d at 1269.  In the instant case, however, it might be fairly said that the Family Court had rejected Ordonez-Snow's evidence, and thus an offer of proof would have been an appropriate way to present the issue to the Family Court while providing the basis for any subsequent appellate review.  Without that information, we have no basis upon which to conclude that Ordonez-Snow's due process rights were violated.

> apprise interested parties of the pendency of the action and afford them opportunity to present their objections.

*In re Herrick*, 82 Hawai'i 329, 343, 922 P.2d 942, 956 (1996) (quoting *Klinger v. Kepano*, 64 Haw. 4, 10 635 P.2d 938, 942 (1981)); *see also Calasa*, 2 Haw. App. at 399, 633 P.2d at 556 (quoting *Mullane v. Cent. Hanover Tr. Co.*, 339 U.S. 306, 314–15 (1950)). Under the circumstances of this case, Ordonez-Snow was not denied his right to due process.

## II. Abuse of Discretion

Ordonez-Snow contends that the Family Court abused its discretion by "providing testimony" on behalf of Higa by synopsizing her position for her without allowing Ordonez-Snow's counsel "to elicit direct or cross examination."[4] The testimony in question, however, involved a summary by the Family Court of the written allegations contained in Higa's petition, with confirmation from Higa that she wanted to proceed and that everything in the Petition was true and correct. The court's act of summarizing those allegations had no independent consequence, and Ordonez-Snow does not contend that the Family Court inaccurately summarized Higa's allegations.

The family court is afforded "wide discretion in making its decisions, and those decisions will not be set aside unless there is a manifest abuse of discretion." *Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting *In re Doe*, 95 Hawai'i 183, 189, 20 P.3d 616, 622 (2001)). "Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason." *Id.* Furthermore, "trial courts have broad powers to control the litigation process before them, including the presentation of evidence." *Weinberg v. Dickson-Weinberg*, 123 Hawai'i 68, 75, 229 P.3d 1133, 1140 (2010) (citing *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994) (citing the trial courts'

---

[4] As noted above, the Family Court did not prevent Ordonez-Snow from conducting any cross-examination.

"inherent power to curb abuse and promote a fair process which extends to the preclusion of evidence").  Nothing in this case suggests that the Family Court abused its discretion in summarizing Higa's allegations.

Therefore, we affirm the February 1, 2017 Order for Protection entered by the Family Court of the Second Circuit.

DATED:  Honolulu, Hawai'i, May 22, 2019.


On the briefs:

Stuart E. Ragan,
for Defendant-Appellant.

Kaycee A. Higa,
Pro Se Plaintiff-Appellee.

Associate Judge

Associate Judge